IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF: | |
| A PURPLE APPLE IPHONE, LISTED AS DEA EXHIBIT N-125 | Magistrate No. 23-1414 |
| A SILVER APPLE IPHONE SE, LISTED AS DEA  EXHIBIT N-126 | Magistrate No. 23-1415 |
| A BLUE APPLE IPHONE, LISTED AS DEA EXHIBIT N-127 | Magistrate No. 23-1416 |
| A BLACK APPLE IPHONE, LISTED AS DEA  EXHIBIT N-129 | Magistrate No. 23-1417 |

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANTS**

I, Katelyn Bages, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state that:

1.      I have been employed by the DEA as a Special Agent since December 2022 and I am currently assigned to the DEA Pittsburgh District Office, Pittsburgh, PA.  I previously served for three years as a police officer with the Missouri Science and Technology, Rolla, Missouri Police Department.  During that time, I spent a year assigned as a Sergeant with the department. Prior to that I served for four years with the Department of Defense Police, based out of the National Security Agency at Ft. Meade, Maryland. During that time, I spent 2 years assigned as a Sergeant and was tasked with handling the Drug Recognition Expert program. As a DEA Special Agent, I investigate criminal violations of the Federal and State controlled substance laws including, but not limited to, conspiracy and attempt to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); and use of communication facilities to facilitate drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b).  I have been personally involved narcotics investigations, and as such I am familiar with the various methods used by narcotics traffickers to transport, store and distribute narcotics and narcotics proceeds. I have knowledge and experience with investigative techniques, including various types of visual and electronic surveillance, use of search and arrest warrants, the laundering and concealing of proceeds from drug trafficking, and the street gangs who participate in these illegal activities.

2.     I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been involved in narcotics related arrests and the execution of search warrants which resulted in the seizure of narcotics.  I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, undercover techniques, white collar crimes, search warrant applications, Title III Investigation, and various other crimes.

3.     Based on my training and experience, I am aware that it is a common practice for drug traffickers who desire to insulate themselves from detection by law enforcement to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators. It is not unusual for drug traffickers to initiate or subscribe such phone or phone device services under the names of other real or fictitious people.  Moreover, it is now a very common practice for

drug traffickers to utilize all communication features of their telephones, most notably the voice call and text message features, nearly simultaneously to communicate with their conspirators.

4.      I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices.  Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, and photograph and video gallery files.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from many cell phones.  In addition, as noted above, those involved in drug and firearm trafficking crimes commonly communicate using multiple cellular telephones.  Contemporaneous possession of multiple cellular telephones is, therefore, evidence of such trafficking.  Moreover, the particular numbers of, and the particular numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone.  Such numbers can confirm identities of particular associates and the occurrence of certain events.

5.      As with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone or a standard computer, are often saved or stored on the device.  Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication or of an internet search may be automatically stored in many

places on a computer or cellular telephone.  In addition to electronic communications, a user's internet activities generally leave traces in the web cache and internet history files.  A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device.

6.     Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they often can be recovered months or years later using readily available forensic tools.  When a person "deletes" a file on an electronic storage device such as a computer, the data contained in the file often does not actually disappear; rather, that data often remains on the device until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on a device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from an electronic storage device depends less on when the file was sent, downloaded, or viewed than on a particular user's operating system, storage capacity, and habits.

7.     I am aware that those who illegally possess drugs and guns sometimes take trophy photographs and videos using their cameras and/or cellular telephones of their drugs, firearms,

and proceeds and retain them on those devices.  In addition, I am aware that drug and firearm traffickers, like law-abiding citizens, sometimes take photographs and videos using their cameras and cellular telephones of themselves with their friends, relatives, and associates and keep the photographs and videos on those devices.  When they are taken or retained by drug and firearm traffickers, such photographs and videos can be evidence, and can lead to additional evidence, of illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as the locations where they live or where they store their drugs, firearms, proceeds, or paraphernalia.

8.      It should be noted that data on electronic communication and/or storage devices is often relevant to a criminal investigation by revealing who used a particular device.  In addition, such data can reveal who resided at or who had access to a particular location if, for example, a particular device was found at a particular location (e.g., inside a particular room of a particular residence) and the device contains data demonstrating that it was used by or belonged to a particular person.  In that sense, a particular electronic device can be significant indicia linking a particular person to contraband or other criminal activity even if the device itself does not contain the remnants of incriminating communications.

9.      I am currently participating in the ongoing investigation into the cocaine distribution activities of Manuel RIVERA and Freddy FELIX in Western Pennsylvania.  RIVERA and FELIX are suspected of distributing kilograms of cocaine.

10.     This affidavit is submitted in support of a search warrant for four cell phones ("the **Subject Cell Phones**").  The **Subject Cell Phones** are in the custody of the Drug Enforcement Administration.  The **Subject Cell Phones** have been in secure law enforcement custody since its

seizure by the DEA.  Any data on the **Subject Cell Phones** should be the same as the data that was on it at the time of their seizure.

11.     The **Subject Cell Phones** that are the subject of this affidavit is described as follows:

*A purple Apple iPhone with clear case listed as DEA exhibit N-125, **Subject Phone 1**;

*A silver Apple iPhone SE listed as DEA exhibit N-126, **Subject Phone 2**;

* A blue Apple iPhone with clear case listed as DEA exhibit N-127, **Subject Phone 3;**

* A black Apple iPhone listed as DEA exhibit N-129, **Subject Phone 4;**

*As explained below, there is probable cause to conclude that the **Subject Cell Phones** contain evidence of the commission of federal felony offenses as listed in Attachment A.

12.     I have personally participated in this investigation.  In addition, I have reviewed information obtained through legal process, such as telephone records, telephone communications and associated data, and information obtained through law enforcement and commercial databases. This affidavit is being submitted for the specific purpose stated herein.  I have not, therefore, included every fact known to me concerning this investigation.

13.     I am one of the case agents for an investigation into the cocaine distribution activities of RIVERA and FELIX.  This affidavit is in support of a search warrant for RIVERA and FELIX's cellular telephones (**Subject Cell Phones**) that were seized during the arrest of RIVER and FELIX at the Get Go Gas Station, located at 9003 Frankstown Road Pittsburgh, PA 15235.

**PROBABLE CAUSE**

14.     I am currently participating in an investigation involving federal and local law enforcement agencies concerning a drug trafficking activities of Manuel RIVERA and Freddy FELIX who are believed to be involved in the distribution of kilograms of cocaine in southwestern PA.

**SURVEILLANCE OF MANUEL RIVERA AND FREDDY FELIX ON AUGUST 30, 2023**

15.     On August 30, 2023, at approximately 12:51 p.m., investigators initiated surveillance on Manuel RIVERA. At approximately 12:51 p.m., investigators observed RIVERA park in front of **TARGET LOCATION 2.** At this time, FELIX is observed leaving **TARGET LOCATION 3** and walking towards RIVERA with a backpack that appeared to be half full.

16.     RIVERA takes the backpack from FELIX. FELIX took a large black rectangular duffle bag that appeared to be full from the rear driver side passenger door and walked back into **TARGET LOCATION 3.** RIVERA took the backpack and walked into **TARGET LOCATION 2.**

17.     At approximately 1:08 p.m., investigators observed RIVERA leaving **TARGET LOCATION 2,** in his gray Audi rental vehicle, with the same above-mentioned backpack**.** Investigators followed RIVERA to the Giant Eagle, located at 9001 Frankstown Rd., Pittsburgh PA 15235.

18.     At approximately 1:11 p.m., investigators observed FELIX leave **TARGET LOCATION 3**, with the same above-mentioned black duffle bag and get into a black Jeep Laredo, bearing PA license plate MCE0377. Investigators followed FELIX to the Giant Eagle, located at 9001 Frankstown Rd., Pittsburgh PA 15235.

19.     At approximately 1:50 p.m., Investigators approached FELIX and RIVERA at the Get Go Gas Station, located at the Giant Eagle, located at 9001 Frankstown Rd. Investigators detained FELIX and RIVERA.

20.     At this time, investigators as FELIX and RIVERA for consent to search the gray Audi. Both denied consent.

21.     Investigators conducted a K-9 sniff, utilizing Allegheny County Police Department, of the gray Audi.  The K-9 alerted to the odor of narcotics emitting from the gray Audi.

22.     At this time, investigators searched the vehicle and found a large black duffle bag in the rear of the vehicle containing ten kilos of a white powdery substance, believed to be cocaine. The ten kilograms were transported back to DEA Pittsburgh where a field test was conducted that indicated the presence of cocaine.

23.     RIVERA and FELIX were arrested and the **Subject Cell Phones** that were seized during the arrests at the Get Go Gas Station, located at 9003 Frankstown Road Pittsburgh, PA 15235.

24.     Investigators spoke with hotel staff at Towneplace Suites Marriott (Room 206) and Fairfield Inn & Suites Marriott (Room 211) to verify the registered guest at the locations.  Room 206 at Towneplace Suites Marriott is registered Manuel RIVERA.  Room 211 at Fairfield Inn & Suites Marriott is registered to Freddy FELIX.

25.     Investigators prepared applications for search warrants for the aforementioned hotel rooms.  On August 30, 2023, at 5:40 p.m., United States Magistrate Judge, Cynthia K. Eddy authorized search warrants for Towneplace Suites, Room #206, 1006 Sutherland Drive, Pittsburgh, PA 15205 and Fairfield Inn & Suites, Room #211, 1004 Sutherland Drive, Pittsburgh, PA 15205.

26.     At approximately 5:41 p.m., investigators executed search warrants at Towneplace Suites, Room #206 and Fairfield Inn & Suites, Room #211.  Inside Towneplace Suites, Room #206, investigators located and seized an Apple iPad, Apple laptop, an undetermined amount of bulk United States Currency (USC), keys, Apple iPhone, T-Mobile SIM card, packaging materials and assorted jewelry (i.e. Rolex watch, Cartier.)

27.     Inside Fairfield Inn & Suites, Room #211, investigators located and seized Twenty-six kilograms of suspected cocaine, a cellular telephone, miscellaneous documents and an undetermined amount of United States Currency (USC).

## EVIDENCE COMMONLY GENERATED BY DRUG-TRAFFICKING AND ELECTRONICALLY STORED IN CELLULAR TELEPHONES

28.     Your Affiant is aware through both training as well as experience gained through multiple narcotics investigations, the targets of those narcotics investigations utilize cellular telephones to not only arrange meetings with their drug customers but also speak with fellow co-conspirators as well as their drug sources of supply.  Your Affiant is also aware that these targets also utilize multiple cellular telephones at one time in an effort to not only thwart detection by law enforcement but also to compartmentalize their drug trafficking customers to one phone, their co-conspirators to another phone, and their drug source of supply to yet another phone.

29.     Based upon my training and experience, I am aware that it is generally a common practice for drug traffickers to store the names and phone numbers of drug customers and photographs and video detailing illegal activities in cellular telephones.  Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, and/or will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often drug traffickers keep "pay and owe"

records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier(s) and the trafficker's dealer(s).  Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

30.     Members of Drug Trafficking Organizations (DTO) often take group photographs with other enterprise members posing with paraphernalia, money and/or drugs.  Many cellular telephones have a camera feature that is readily capable of capturing and storing these group photos.  In my experience, the phones of individuals who illegally possess firearms often contain evidence of unlawful firearm possession in the form of text messages, e-mails, and social media posts.  It has also been my experience that such phones often contain information regarding how an unlawful possessor acquired his firearm.

31.     Members of DTOs often store each other's phone numbers and contact information in the directories of their cellular phones.

32.     Based on my experience and familiarity with cellular telephones, I am aware that the telephones have voicemail and telephone directory features, as well as camera features which allow the user to take photographs and store them in the cellular phone's memory card.  Based on my experience and training, statements by other law enforcement officers, and personal observations, I know that because of the storage capacity of cellular telephones, the portability of cellular telephones, the ease with which information stored on a cellular telephone may be accessed and/or organized, and the need for frequent communication in arranging narcotics transactions, cellular telephones are frequently used by individuals involved in drug trafficking.  In particular, I and other law enforcement officers have found that information frequently maintained on cellular telephones includes the contact numbers of other co-conspirators, contact numbers for narcotics

customers and stored photographs of DTO activities.  This evidence will come in the form of caller identification information, call log information, telephone numbers, address information, or other identification information, as well as opened and unopened voicemail and/or text messages, photographs, videos and information about access to the Internet.

33.     Members of DTOs routinely use multiple physical phones in succession as one breaks or the DTO feels that the number associated with the phone is compromised to Law Enforcement.  The physical phone may no longer be an active communicative device, however many times, these old phones are not discarded as they possess value to the DTO.  The replaced device contains within it the contact information for drug customers of the DTO, and many times these phones are maintained as digital phone books should the new active phone become unusable or unavailable.  Furthermore, these replaced phones are commonly kept in a relatively accessible location where either all or select members of the DTO can access the information within should it become necessary.  As stated above, members of DTOs routinely take photographs and or memorialize other information of evidentiary value within these replaced phones.  As such, it is common to recover a multitude of otherwise inactive phones especially at locations central to or important to the DTO.

## **TECHNICAL TERMS**

34.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communications through radio signals.  These telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

35.     GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

36.     Internet:  The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensic tools.

38.     As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the devices because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39.    *Nature of examination*.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Cell Phones** consistent with the warrant.    The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40.    *Manner of execution*.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.    Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

41.    Based on the above facts and circumstances, your Affiant submits that there is probable cause to believe evidence, instrumentalities, and fruits of drug-trafficking are contained in the **Subject Cell Phones**.    Accordingly, your Affiant requests issuance of a search warrant authorizing the search the **Subject Cell Phones**, for the items identified in Attachment A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*/s/ Katelyn Bages*
Katelyn Bages
Special Agent
Drug Enforcement Administration

Sworn to before me telephonically
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 5th day of September 2023.

_____
HONORABLE LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## ITEMS TO BE SEIZED

1.      All records, information, and items evidencing who used the device and/or when and/or

from where, or a violation of Title 21, United States Code, Sections 841 and 846, and/or

Laundering of Monetary Instruments, including:

     a.      incoming and outgoing call and text message logs

     b.      contact lists

     c.      photo and video galleries

     d.      sent and received text messages

     e.      online searches and sites viewed via the internet

     f.      online or electronic communications sent and received, including email, chat, and instant messages

     g.      sent and received audio files

     h.      navigation, mapping, and GPS files

     i.      telephone settings, including speed dial numbers and the telephone number for thesubject telephone and related identifying information such as the ESN for the telephone

     j.      call forwarding information

     k.      messages drafted but not sent

     l.      voice messages

2.      As used above, the terms "records" and "information" include all of the foregoingitems

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form. However, no real-time communications will be

intercepted and searched during service.